Case number 10-3747, Nita Marchant v. Illinois Department of Children and Family Services Okay, would the two of you identify yourselves and then the appellant will proceed. Good afternoon, Beth Johnson on behalf of Nita Marchant, the appellant. I'm Janet Fabiano, an assistant attorney general here on behalf of the Department of Children and Family Services. Thank you. Ms. Fabiano, whenever you're ready. May it please the court, good afternoon. When we're looking at agencies' decisions, great deference is given, but that deference can't be blind to a decision that's inconsistent or unsupported by the facts. Notwithstanding whether the indicator report falls within the Abused and Neglected Child Reporting Act, which we submitted does not, the Department of Children and Family Services' final decision that Ms. Marchant's use of corporal punishment was excessive or unreasonable violates either the clear error or the manifest way to the evidence standard and should not stand. This is because the administrative decision is inconsistent with the record and its own factual findings, with its own rules and regulations, and with the established case law in this district analyzing what's excessive or unreasonable. Inconsistent decisions, even when given the greatest deference, cannot be upheld. Now, the facts in the case are not in dispute. Ms. Marchant was a paternal aunt of the two minor children. She was the only relative that was willing to take them in after the sudden and tragic death of their mother. They are wards of the state in Ohio. Their adult brother also moved in with her. It's uncontested. She moved to a larger apartment to give the children more room, a nicer place to live, enrolled them in school with special education, after school programs, was doing things to help them acclimate here. But the record also shows the administrative law judge's decision that they're street savvy kids, that they're placed in multiple homes in Ohio, they're undisciplined and reactive to authority. The 14-year-old, that's the subject of the indicated finding that's at issue here, had a history of lying to officials, as well as a history of self-mutilation. And these are troubled children, but because of the past that they, it was no fault of their own, found themselves in. And the record of the administrative decision also states the older brother who testified at the administrative hearing, who was found to be a credible witness, said that the 14-year-old said she'd rather live in foster care than with Ms. Marchant, where there's too much structure. And ultimately a conflict arose between the children as she attempted to set boundaries for their behavior. The incident in question here was her use of corporal punishment to set boundaries because the child would not go to the after-school program and refuse to. It wasn't for reasons that were not founded. It was because she was trying to have structure in their life. Are we allowed to consider her conduct towards the younger brother, or is this just a question of the conduct with respect to the sister? I think the conduct with respect to the sister would be at issue here. The administrative law judge's decision stated that it was in question whether or not there was any corporal punishment with the younger brother. And additionally, those indications were dismissed. So I do believe it would fall under the conduct with just the 14-year-old older sister at this point. As you know, DCFS took temporary custody of the children. They were ultimately returned to the state of Ohio. There's no final adjudication in the juvenile court here. On this record, the department indicated Ms. Marchant for number 11, allegation for cuts, bruises, and welts. In this case, that finding of abuse had to have been based on excessive corporal punishment but that should be considered clear error under the Administrative Review Act. Their own decision, that same decision, said that no competent evidence was presented that the appellant's conduct during the... Does the attorney general agree with you that the standard review is clear error? Yes. Non-manifest weights as to the factual findings? It would be clear error because it was how the facts were applied to this legal conclusion. It was agreed, and even if it was the manifest weight of the evidence standard, I think the inconsistencies would show that this case should be overturned. The department found that no competent evidence was presented that the appellant's conduct during the time that she cared for the minors ever created a real and significant danger of physical injury, which would cause a disfigurement, death, or impairment, or their place in an environment... Those are the counts that have been expunged. Those were expunged, those counts. Earlier you said we shouldn't be considering the evidence. Just excessive corporal punishment. That's right, and these are the things under Section 3, the definition and anchor that's provided for an abused child. Those are two of the factors, and in their own decision, they said those two factors were not present in her case. So although it was going to those indications that were ultimately expunged, it also goes into the overall significance of what was going on in the home. And so based on that, the only thing that would be left would be the excessive corporal punishment, and that cannot stand either because it's inconsistent with both the facts in this case and the established case law on excessive corporal punishment. And it shows that not every cut, bruise, weld, abrasion, or oral injury constitute an allegation of abuse. In the case law... So the more frequent infliction of corporal punishment on the younger brother would not be something that we could consider in determining the validity of that finding? I would say no because the Department's decision brought into question whether that even occurred. But it says in there... But supposing it had occurred? Pardon? What if it did occur? I think it would go back to taking a step back and be looking at what is acceptable corporal punishment. There's nothing that says corporal punishment is unlawful. But are we restricted in terms of which child is the subject of inquiry? In other words, we only know of two or three incidents with regard to the sister, but we have reason to think that there's a twice-a-week or a more frequent application of corporal punishment and of a different nature of the punch in the chest and so on with regard to the brother. Does the brother's treatment, whatever it might be or might not be, play a part in this appeal? I would say no because there was no finding of excessive corporal punishment on him, and no significant danger, no environment that placed him in such danger. Looking at what the case law has held in terms of excessive corporal punishment, this case would be more in line with NRAJP than it would the other case law regarding this. NRAJP would, I think, even fall below that. That was a case where the mother of a 4-year-old child admitted to frequently spanking her with a wooden spoon, called it a rod based on her religious beliefs. Well, there were other things in NRAJP, including demeanor, the relationship generally between the little 7-year-old and the mother, the forthrightness of the mother, the reasons that she gave, and the fact that she remained calm. All of these are factors, not just the frequency. But frequency is a factor. And we don't have any of that here. We don't have a mother explaining all that, do we? We have someone saying that they use corporal punishment for a reason, to set boundaries for a child. What J.P. really says, at least as far as what I read, and see if you agree with that, that it's like obscenity to Potter Stewart. You might not be able to pinpoint when it is, but you know it when you see it. Right. There's definitely no great line rule that would make this much easier if it was. But looking at the other cases that excessive corporal punishment was found, to say that that's even close to those cases would not be fair either. It would be inconsistent with those findings. You know, using weapons, punching people in the face, in the groin, using a plastic baseball bat, throwing alcohol in a child's face, leaving welts on a bat. Well, there's proofs in this case. And there's testimony that she disciplined her when she found out about her not going to some class. Twice, at night and then in the morning. Yeah, and for not going to her after-school program. Right. And so she disciplined her with the paddle, and then she did it the next morning as well. Had to do it again for good measure. I don't think it was established that she did it again for good measure. Well, she did it again. And it still was going on, refusing to go to the after-school program. Now, did she fight to keep these kids? Do we know that from this record? It's not clear from the record here. They did take the kids that day. It seems from the record that she let that happen, and she's only coming in here to expunge the findings. Going back through the record, it does show, looking at the transcript of the administrative decision, that she, that day that it happened, she did let DCFS take them, but the next morning went to the caseworker asking to set out the service. That's in the record. Wasn't she told that she should not use the paddle on the kids? She was told that by one of the caseworkers. And she said she was going to use that paddle no matter what. Because verbal punishment is not unlawful. Right, but I'm just telling you what she said. She said she was going to do it after she was advised not to. Then she goes and does it because the child didn't go to her after-school program. Right. She didn't want the child roaming the streets. That's correct. Did she say, I didn't want her roaming the streets? Well, there would be no other reason to not go to that after-school program than to set structure. Well, I don't know. See, that's another thing. In the other case, there was testimony about these things. But Ms. I don't know how you pronounce your name. Marshawn. I don't recall her testimony about she wanted to have structure and she wanted to set boundaries and she wanted to make sure that her child went to or the child that was living with her, that she wanted. There's none of that in this record. She didn't give testimony. So we don't go out. I mean, we can certainly draw inferences. Right. But in the JP case, there was testimony in that regard. Right. So that's not in this record. It didn't mean there was testimony. But she was pro se representing herself in those proceedings, so there wasn't any testimony from her. There was just testimony as to the other parties involved. Right. Yeah. You're basically presenting an issue of law, in your view, in the sense that since number 10 and number 60 were dismissed based on a record and the finding that there's no abuse, no danger to the kids, therefore, since based on that record, those were dismissed. On remand, we have the same facts, the same record, but a different charge. And therefore, you're arguing that since there was a finding of no abuse in the first two that were dismissed, we're all bound by that finding, and therefore in this third case on remand, we're also bound. The hearing officer is also bound. Well, it would be bound if there was, in fact, excessive corporal punishment. Well, but we have the same record. Right, and the fact of the matter was that the environment that they were in, her entire conduct during the entire time with the children, although not particularly talking about number 11, the indication at issue here, that there was no danger presented to those children. So it seemed inconsistent. Can we take notice of the fact that this paddle was two inches thick? That's pretty heavy stuff. It can do damage readily. I'm not saying that damage, even bruises, was damage that was done, but it's a heavy implement that we're talking about. Right. Well, isn't the nature of the instrument something that we should consider in deciding whether this was excessive corporal punishment? If the child was whacked with a cast iron skillet, doesn't the fact that it's a cast iron skillet suggest that it's excessive? So, too, could a two-inch thick paddle suggest in itself that it's excessive? That's just one of the factors that I think you would look at. I do agree that in the cases where excessive corporal punishment was found when you're using extension cords, I think the instrument itself had to have led to that decision. But so did the injuries that came out of it.  At least that's the testimony. And there's testimony that this was a two-inch thick paddle. So, you know, I'm just saying that's something that goes into the equation. And if the hearing officer here found it was excessive, it could be based on that fact in addition to the bruises. You know, the instrumentality here was a two-inch thick paddle. Right. And what his decision did say was that he came to that conclusion because of the use of the instrument and because there were bruises. It wasn't any other factors, any other considerations that the courts had taken or that their own rules and regulations set forth. There's a multitude of factors. He doesn't have to set out all the factors. And he doesn't even have to set out those factors, does he? But he did. He needs to have some basis for that decision. He did set those out. Yes. Okay. And if there's no other questions, I would just reserve what would be left for rebuttal. Thank you, counsel. Thank you. The department denied the plaintiff's request to expunge the indicated report of child abuse against her. Can I just ask you one short question? What are the consequences of these findings? In other words, is this simply a matter of one's own self-image or are there consequences attached? Where do these findings go? Well, they're on the central register, which the access to that would be controlled. So that would play a part in the event of any attempt to adopt or what? What tangible consequences attach? I'm asking that question undervaluing the subjective impact. I know it has limited access to the central register, but I'm not sure what the consequences then would be. Okay. That's an answer. The department denied her request to expunge the indicated report against her for causing bruises to a child because it found that she had intentionally struck a child with a wooden paddle causing bruises to the child. The plaintiff is not disputing engaging in the conduct found by the department, but is arguing that it didn't constitute abuse under the act. Well, aren't they arguing it's not excessive? Yes. Aren't they looking at whether or not this punishment imposed amounts to excessive corporal punishment? That is one of the issues. And we're talking about punishment that the victim herself said only occurred two or three times. Yeah, but in this case, a consideration of all of the factors here in the case demonstrate that her conduct was not reasonable here. I mean, you have an incident where it is undisputed that the child sustained three bruises to herself over different parts of her body. She had a bruise to her arm, to her back. Did all of these bruises, is it clear that these bruises all came from the paddling or was there resistance and some fighting back and so on that would have caused the bruises on the face? It's not clear. There was an altercation. So it wasn't necessarily bruises that were intentionally inflicted. Well, but she was intentionally struck. One bruise might have been intentionally inflicted, but it's not clear that any of the others were. Well, that's true. That was all a part of the struggle while she was striking the child. Some of the bruises on the arm and the thigh were the size of a 50-cent piece, bluish in color. She used a 2-inch wooden paddle to strike the child. And she did this because the child had left an after-school program, and she did this both when the child got home from school and then again the next morning resumed hitting her. So based on these circumstances where you have intentional striking of the child using an instrument to do so, causing bruises over different parts of the body. Aren't we going to have to separate between the charge of excessive corporal punishment from the fact that this was not a parent and child? It was a mismatched situation. It was not a situation where evidently the parenting skills were the ones that were required to cope with the situation. But that has to be separated from the charge of excessive corporal punishment, doesn't it? Because if there would have been more cooperation with the children, more of a rapport, this same conduct might have been JP. I mean, I'm not sure I understand. Well, in JP you don't have conduct that's dissimilar except for the nature of the instrument, which was a spoon. But the frequency was greater, and there was more of a relationship between the mother and the child. There was, in fact, indications of a loving relationship, a very positive relationship there. Here the relationship was not that at all, but there's reason to think that these children were already in some difficulty in dealing with parental authority or otherwise even before the relationship commenced so that the attempts to cope with it were futile and stand out more. But to what extent should that influence whether that same conduct would merit the charge of excessive corporal punishment? Well, that still does not render this particular circumstance to be reasonable. Again, the significant facts here are the facts that she is striking the child with a two-inch wooden paddle because the child has left an after-school program. But the striking was two or three times by the same token. In the evening it was two or three times. It was not the JP parade of horribles in that case. It involved one instance of a hundred strikes. This case, I think, is different, though, from the JP case. And the trial judge at least said it was barely. So the trial judge felt that this situation stood out. But in the JP case you have an incident where she only inflicted one bruise. She was horrified after having caused it. And the evidence showed that she, in administering the punishment, had been very calm and that the child was unaffected and remained happy afterwards. In this case, in addition to the circumstances of the striking with a two-inch wooden paddle and then causing multiple bruises, there was testimony that the child appeared fearful after the incident as well. You mean that the ZL remained fearful? Right. Even though ZL remained more sullen and sardonic and fearful, I mean, because she even at some point denied the incident. The brother, we're forgetting about the brother's testimony, that she lies. The brother's denial of the events that happened. But the facts here are not disputed. The older brother. The facts here are not disputed. Courts have held that the use of an instrument is distinct and different from using an open-handed swat on children and that the use of an instrument does raise concerns. And here you have circumstances. Except that we have to keep in mind that regardless of our own subjective sense of whether any corporal punishment should be justified, that we're not living in Sweden, that the rules nevertheless do condone corporal punishment that isn't excessive. And we have to examine whether the conduct here fits within that mold, even though it may not fit within our own tastes or preferences. Well, again, the consideration of all of the factors here would lead to the conclusion that it was not reasonable. The department is the agency that's charged with administering the act, and therefore its determinations under the act are entitled to deference. And here it examines the facts in this case, and it determines that the plaintiff's actions caused harm to the child under the act and constituted excessive corporal punishment. And where it is undisputed that the plaintiff had intentionally struck the child, had used a two-inch wooden paddle to do so, and that it resulted in the child having multiple bruises, the department's determination is not clearly erroneous here, and therefore its decision should be affirmed. So for these reasons, thank you. Any rebuttals? We do give deference to administrative agencies, how we started off today, but that can't be given deference when it's an inconsistent decision with its own findings, with the rules and regulations of its own department and the case law. I think you dig it to the heart of the matter that no matter how one views corporal punishment, it's nothing that is unlawful. And you need to look at the facts surrounding it. And there really isn't a case like this one, is there? I don't see either of the cases that I've read. I don't see something like this. Every case should obviously be considered on its merits, and I don't think this is necessarily the same as any case that either party has cited. And the cases that have been cited, that's excessive corporal punishment that was found. This is nowhere near the actions in those other cases where the courts did find it. But we don't have any two-inch paddle cases, do we? We don't have a two-inch paddle case. No, that was not one of the things that was looked at. But again, going back to the factors to be considered in these indications and whether or not that constitutes abuse, there was no substantial danger found. But what about the cases that talk about what you determined where the corporal punishment was excessive? Those factors are whether an injury occurred, whether the punishment was imposed for no reason, whether the punishment was excessive in light of the circumstances, and any medical or expert testimony was presented. Those are the factors we're looking at, truly, not whether she was vindicated on the other charges. Right, but that's just going to the overall definition of abuse and the environment that was finding that. No, what I'm citing are the factors that we, as a reviewing court, look at in determining whether the corporal punishment was excessive. That's the issue in front of us, not whether the other charges were properly expunged or whether or not the harm that was imposed didn't cause these other things. I mean, that's what you're sort of arguing, but that's really not what we look at as a reviewing court, do we? I think that is one of the factors that would be considered here. And looking at the factors when it goes to the heart of excessive corporal punishment, this was an isolated incident. This was not something that recurred over and over and over. This was not just to punish a child for no reason. It was trying to set boundaries for a child. There was questions as to whether these bruises were even caused by the paddle. There is nothing to suggest that. Yeah, but you would have to. We would be relatively powerless with respect to that because we would have to bear the manifest weight of the evidence rule that would apply as to the underlying fact. Which is why we just have to look at the decision and its inconsistencies with the case law, the rules and regulations and the factual findings within it. And inconsistent decisions can't stand, and that's what this would be. Well, we have to say that the hearing officer clearly made a mistake. That's what we have to say. That's the standard of clearly erroneous, that we're firmly convinced that a mistake was made. Isn't that the standard? Yes, it would be for this. So that's what we have to say, that the hearing officer in this case clearly made a mistake when he concluded that the corporal punishment was excessive. And based on the facts of this case, that's what we believe should be held, that it was a clear mistake. A definite conviction there was a clear mistake here. All right. Anything else? No, that would be it. Thank you very much. Again, the case was well presented. The briefs were interesting and comprehensive of a relatively narrow theme. Well, thank you for your time. We'll be taking other advice. Thank you.